The next case this morning is 524-1238, Brie v. Midwest Transport, et al. Arguing for the appellant is Scott Fondry. Arguing for the appellee is Larry Sloss, Jr. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good afternoon, counsel. Appellant, if you are ready to proceed, you may do so. Good afternoon, your honors, and may it please I'm Scott Fondry, and I represent the defendant appellant, Midwest Transport. The issue presented before the court is whether the trial court erred in lifting the stay that was imposed by a receivership order entered in a separate receivership case. Midwest Transport believes for four reasons that the trial court abused its discretion when it reversed course and lifted the stay. First, it ignored well-established principles of judicial economy. By having one court hear all creditor claims, it minimizes the duplication of efforts and protects wasting precious judicial resources. And it's particularly appropriate in a case where we have, in this case, to have all creditor claims handled in the receivership case. Midwest Transport is in Midwest Transport was a trucking company in Robinson, Illinois. 95% of its business was with the post office. In September of 2024, the post office terminated their contract, and Midwest Transport ceased operations. So, Midwest Transport is insolvent. The creditors are owed in excess of $100 million, and there's about $6 million in assets. So, substantially underwater, there are over 400 creditors for Midwest Transport. So, having separate lawsuits filed by creditors would be a tremendous burden on the courts and a waste of judicial resources, particularly in a situation where a company is in liquidation. It is woefully inefficient to task different circuit courts with sorting out who gets what of the pie when there's dwindling assets available. So, it really cries out, the situation really cries out for an orderly distribution of the remaining assets. By having everything go through the receivership court, it preserves the status quo. Again, it leaves the court of duplicating additional resources to resolve highly contested claims, such as here, we have a highly contested summary judgment motion pending before the court in this case, before the trial court. We also believe that the assets of the company are also being dwindled down, and it's also exposing a lot of costs to the receiver. The receiver has to defend separate actions, or it has to have counsel of the company defend separate actions. This is money that is wasted and will not go to any of the creditors. So, again, it's a duplication of work and, as I said, really is to the benefit of all creditors to have one proceeding handling all of these claims. And Mr. Feree, the plaintiff here, is certainly capable of protecting his interest and filing a claim in the receivership court. The receivership court is the one court that is set up to address the claims of Midwest Transport. I draw the court's attention, as we said in our brief, the case of Chicago Title versus Goldman. In that case, the court pointed out that the proper procedure in the instant case is to file a claim in the bank receivership proceedings in the superior court. In that proceeding, an orderly equitable way for all the creditors of the bank will have their day in court. So, in the Chicago Title versus Goldman case, we had a bank that had failed, and there was a separate action filed outside of the receivership case, and the court found that that was not appropriate. They need to file their claim in the case, in the receivership case, so all claims would be appropriately heard at the same time before the court. And we also have the case that we cited, Little versus Chicago National Life Insurance Company, which again, there the court said that the first court to address the subject matter, which was a receivership, is the court that should have jurisdiction over the matter of determining the claims of the various creditors. So here, the receiver has been set up in the receivership case, and they have jurisdiction over the claims of creditors, and they should be the court to resolve the claims. So, all in all, judicial resources are very limited, and the Illinois Supreme Court favors an efficient process of resolving these types of cases without having multiple cases being argued or pending at the same time. A second reason why we believe that the receivership order, the stay of the receivership should remain in place, is for an orderly administration of justice. Having two courts take opposite positions on the receivership stay is certainly not consistent with the orderly administration of justice. One court should not be disregarding the orders of another circuit court judge, and that's what we have here. We have a receivership case where the trial court judge has entered an order staying all proceedings and claims in other courts, and we have the trial court judge here in the Feree case deciding to lift the stay and to move forward with litigation. So we've got really opposite orders now between these two court cases. And as I stated in the little case, the courts have ruled that the court that is set up to handle the receivership is the court that should have the jurisdiction to handle the creditor claims. The other issue that's presented here is that the lift order in the case has given Mr. Feree the green light to ignore the receivership order, and he's essentially in contempt of court of the motion in the receivership case to have that stay lifted. And when the court did not grant his motion to lift the stay, he decided to file a motion back in the Feree case to have the stay lifted. So essentially, he submitted himself to the jurisdiction of the receivership court, wasn't getting or didn't receive an order lifting that stay, so then he goes back to the Feree case. This is essentially almost like forum shopping. If you don't like what one court's doing, you try to go to another court, and that's somewhat of what's happening here. Third, we believe it's a waste of the company assets and receivership resources by having separate cases and proceedings. Again, as I've noted, Midwest Transport has minimal assets compared to the debts that it has, and this has already cost significant resources to be allocated to address Mr. Feree's case and will only continue to do so as that case proceeds or if it proceeds. And when it comes to the assets of a company that's under receivership, the receiver is going to get paid first out of the assets. So the more we have these separate cases or a separate case, it's going to cause a substantial decrease in the assets, which really impacts all creditors. And fourth, we believe that allowing one creditor to have a separate action gives them an advantage over other creditors, which is not really what our law contemplates. By having a separate action, Mr. Feree is allowed to try to obtain a judgment, collect on a judgment outside of the receivership, and the receiver is trying to, of course, administer these assets in a way that is fair to all parties. The receiver is an officer of the court. They are looking out for all creditors, and it makes it very difficult for them to do so if there's going to be separate actions being filed. We would also note that we recognize that in response that there has been arguments raised that separate actions have been allowed in particular situations. We don't believe that the cases that have been cited by Mr. Feree are really on point to the issues that we have before the court today with respect to the power of a receivership and an order staying another court case. None of the cases that have been cited by Mr. Feree really address this particular situation where there's been a stay imposed, and we don't believe that those cases are really relevant to the case at hand. Many of the cases cited are federal court cases, which are quite distinguishable and are non-binding on this court with an action dealing with two separate state court actions as we have here. So, we believe that overall that the trial court has abused its discretion by ignoring well-honored principles of law, and we believe that the court should find that the stay should be re-implemented and the stay should remain in place until the receivership case is resolved. I thank the court for your attention this morning. Thank you. Any questions, Justice Vaughn? No questions. Justice Barberis? No, thank you. Thank you, counsel. Applee, you may proceed. Thank you. May it please the court, my name is Larry Sloss, and I represent the plaintiff, Mitchell Feree, in this case. In February of last year, we filed a complaint on behalf of Mitchell Feree for breach of the promissory note with regard to installment payment due under promissory note of $2.2 million. Since that time, there has been numerous attempts by Midwest Transport to delay or prevent Mitchell Feree from moving forward. We have cite those, set out the chronology of that into our facts of our brief. There's two issues I'd like to highlight is one that immediately before the motion for summary judgment was set for hearing in June of last year, Midwest Transport filed a motion to substitute judge. The judge you want to substitute was Judge Matthew Hartrich, which ironically is a judge who entered this agreed order that they're trying to use as a shield in the present case. Also, that required our court to assign another judge to the case. When Judge Strange was assigned to the case, he finally was able to set the case for hearing on summary judgment on September, I believe it's September 10th, if I recall the date. The day immediately before is when an agreed order was submitted to Judge Hartrich, asking Judge Hartrich to enter an agreed order that basically had language in it to put a stay in place. I would ask the court to look at that agreed order. It's a 17 page order, buried in the middle of that order on page eight of that order, which I believe is page 156 of the common law record. There's an order that only provides protection for two parties. One is First Merchants Bank, who's the plaintiff in the other case, and Midwest Transport. That order, to summarize, says after the effective date of the order, all other persons or entities who have notice of this order, other than the plaintiff, that being First Merchants Bank, are essentially stayed and enjoined from even prosecuting the case against the defendant being Midwest Transport. The issue in this case is whether Judge Strange abuses discretion in lifting the stay, and on the basis of the procedural history, as well as existing law based on English common law up through the American jurisprudence, we believe that he was justified in lifting the stay in this and was acting within his discretion. As this court's aware, the appointment of receiver dates back to origin goes back to English common law. A receivership is an in rem proceeding, whereas a claim to reduce or to breach a promissory note is an in personam proceeding. Those are two separate and distinct remedies. An in rem proceeding affects specific property, all persons have specific property. In personam is essentially a claim of one litigant seeking a judgment against another litigant. The well established law that we cite in our brief at pages nine through 13 goes back and refers to the English common law all the way up to the current. There are Illinois Supreme Court cases, old Illinois Supreme Court cases, there's also federal cases. Those cases hold that the appointment of a receiver does not enjoin, does not restrain, does not prohibit creditors of that defendant and receivership from getting an in personam judgment against the creditor. These cases reason that the appointment of receivers and in rem proceeding, that it's not within the court's equitable powers to stay a proceeding against that defendant and receivership for reducing a claim to judgment. Once you have the judgment, then you may have to enter it into receivership thereafter assets that are within the control of that receivership. Again, to respond to counsel's arguments and their brief, Midwest Transport has provided to this court, or not provided to this court or to the court below, any case which supports that a appointment of a receiver stays all actions against the defendant and receivership. As far as general principles of economy, those do not really address an abuse of discretion standard. They also argue that one judge should not act inconsistently with an agreed order entered by another judge. First, I would point out that has not been argued below, and it's our position that that issue is way for purposes of appeal. And secondly, that agreed order 17 pages, something drafted by Midwest Transport and First Merchants Bank. It was not something that was made on findings of Judge Hartrick. It was a 17 page order submitted to him the day before the court's appointment. The hearing on Mr. Faree's motion for summary judgment. Also, the restraining language in that is contrary to the law, dating back to English common law on receivership being in personam judgment. We do not believe that a judge should be basically required to follow every order if it's contrary to what the existing law is. For instance, had that order had buried in it that all claims against Midwest Transport would be dismissed, was then Judge Strange obligated to dismiss the claim against Midwest Transport. Also, they talk about that there's 400 potential creditors. If you look at that list of creditors, including the common law record, they're creditors from all across the continental United States. Many of them include taxing authorities of sovereign states. They failed to address how they can make these creditors or even have jurisdiction to come in to Crawford County and submit their claims when it's claims of taxing bodies, claims of creditors in Delaware, how they're all required to come in. The practical effect, it's staying one cause of action. That's the cause of action that Mitchell Faree has filed. There's clearly no prejudice to the receiver. What Midwest Transport is trying to do is blur its distinction between it and the receiver. The receiver is court appointed to control the rest control. It is not a litigant in claims against Midwest Transport. As this court's aware, a judgment creditor stands in much better position than an unsecured creditor. Also, the entry of a judgment in favor of Mitch Faree will not affect the rest that's in the receiver's possession. Also, it's a little misleading the way they try to characterize Mitch Faree had filed a petition to seek relief in the receivership case. That is true. We did file a petition seeking relief. However, what they failed to point out and to mislead this court is they objected to Mitchell Faree entering into that saying that he'd not have standing because he was not a party to that. He had not intervened in the case. That was argued not only by counsel for Midwest Transport. It was argued as well by counsel for First Merchants Bank. For some unknown reason, even the receiver, who's a neutral party, the attorney for them argued against us. The other cases involving banking situations fall under some federal acts. Those acts that they cite basically puts a bank in receivership that's federally insured that gives statutory authority to the receiver much different than this case. In this case, the receiver certainly does not have authority on behalf of Mitchell Faree to reduce his claim to judgment. What we're asking to do is to proceed to reduce that claim to judgment so that we can then determine whether the status of In conclusion, it's our position that the appointment of a receiver being an interim proceeding does not enjoin, does not stay a previously filed suit that was filed months before the receivership, which is an impersonum for breach of promissory note. Judge Strange did not abuse his discretion. He did not act arbitrarily. He did not act beyond the bounds of reason. He did not misapply the law. The law was such that a receivership does not enjoin impersonum proceedings. We're asking the court to affirm Judge Strange's decision. Thank you. Any further questions, Justice Vaughn? Just for clarification, the record sheet that shows when the judges made their docket entries, Judge Weber recused himself, and I think he also granted the motion to substitute Judge Hartrick on June 26, 2024. The September 10th docket entry indicates Judge Weber presided over that hearing after recusing himself, but that docket entry is made by a clerk. The initials show some user, and then it has CLW, Judge Weber's initials. My understanding is, and I think maybe one of you addressed it in the brief, but Judge Weber did not preside over that hearing. Is that correct? He did not. That was Judge Strange that was a record in September, and I believe the hearing was set for September 10th, and we received the order an hour and 15 minutes before, or the motion to try to stay at an hour and 15 minutes before the scheduled hearing. Am I correct that Judge Weber granted the motion to substitute Judge Hartrick He did. June 26th, but there are orders in here. Here's an order dated September 9th, 2024, that Judge Hartrick signed. So, how is that happening? That is signed in that receivership case, which is, like I said, is somewhat inconsistent, which shows efforts to try to continue to thwart Mitch Ferree from moving forward. He was substituted. That was in a different case. That's a separate case. That's a receivership case, or the case involving the First Merchants Bank claim default, which will end up in a receivership default on their loan agreements. All right, thank you. Anything further, Justice Barberis? No, thank you. Rebuttal? Yes, Your Honor. With respect to the facts of the case, plaintiff seems to be alluding that Midwest Transport had some sort of nefarious motivation for having a receiver appointed. As I stated previously, Midwest Transport is insolvent. They were in a dire financial situation. Their contract with the post office got terminated in September, days before there was to be the hearing on the motion for summary judgment. And so, First Merchants, the largest creditor of Midwest Transport, filed the receivership case. They filed the motion for the appointment of receiver. Midwest Transport did not object to that. It seems to us that it made perfect sense to have all the creditor claims addressed through a receivership case, instead of spending precious resources in defending what potentially at that time, and can still be at this time, multiple lawsuits. So the receiver was appointed. We had no control over the timing of that. And it's not unusual in a receivership order to stay any pending claims outside of the in order for the receiver to be able to address all creditor claims. I mean, it sort of defeats the purpose at some level, if you're going to have a receiver appointed and the receiver can address all the creditors in that one case. And so, as I said, there was nothing nefarious on the part of Midwest Transport in how the receiver was appointed. And so the other issue being raised is that there's a distinction between an in personam and in rem proceeding. Again, that really doesn't address what the cases or courts have looked at with respect to judicial economy. And also trying to make sure that, you know, there's an adequate administration of justice, whether it's in personam or in rem, there's still resources that have to be spent in defending separate lawsuits and in addressing separate claims. I mean, typically, in a receivership case, parties come forward and they submit their claims to the court. And unless there's some objection, for some reason, asked to those claims, you're not going through a full trial as to each particular claim. And so it's a tremendous burden if you're going to have creditors filing separate actions. The receiver, even in this action, has had to, you know, at least send counsel to this case just to monitor what's happening with this proceeding. So there's already an expense to that. We have had to get approval to defend the case and spend resources on that. So there is certainly a detriment to having these separate causes of action. And that's why we think it's an abuse of discretion on the part of the trial court judge in this case, because he's ignoring all of these principles as to why we have, you know, why we set up receivership cases. And as we've noted, we believe that the cases that we have cited are directly on point, you know, allowing the separate receivership case to handle all creditor claims. Again, the cases cited by Mr. Furry, again, really don't address the imposition of a stay on creditor claims. They generally talk about whether there can be separate actions filed. But if there isn't a stay in place, then, you know, I would suppose, you would be allowed to go forward with a separate action. That was just not at issue in most of those cases that were cited. And most of them are federal court cases that really aren't addressing Illinois state court receiverships or a conflict between two state courts. In terms of the, you know, the issue of us not raising the issue of the inconsistency in the trial court opinions, well, of course, first and foremost, the inconsistency did not come about until the order was entered in this case lifting the stay after we had argued the case before the trial court judge. And of course, Judge Strange was well aware of the order that was in place, that his order lifting the stay was going to be inconsistent with the receivership's ruling. So that was all known before the court as to what the impact of his ruling was going to be. So again, I don't think there was any forfeiture of that issue. The parties were well aware, and that was noted in terms of what the receivership order had, how it had been entered. So again, for all those reasons and the reasons we cited in our brief, we believe that the trial court order should be reversed and the stay should be re-implemented. Thank you, Your Honors. Any final questions, Justice Fahn? No other questions, thank you. Justice Barberos? No, thank you. Thank you, counsel, for your arguments. We will take this matter under advisement, issue a ruling in due course.